## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RODERICK JAMES IVERY,

      Petitioner,

v.                                                                 Case No. 8:23-cv-2300-WFJ-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

Roderick James Ivery, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1; Doc. 1-1). Respondent filed a response opposing the petition. (Doc. 7). Although afforded the opportunity, Mr. Ivery did not file a reply. After careful review, the petition is **DENIED**.

## I.    Background

On August 25, 2015, Mr. Ivery raped the daughter of his "on again, off again" girlfriend. (Doc. 7-2, Ex. 6, at 474). At the time, the victim was 18 years old, and Mr. Ivery was 43. (*Id.* at 260, 463). The rape was the culmination of several years of escalating sexual advances by Mr. Ivery toward the victim. When the victim was "15 or 16" years old, Mr. Ivery picked her up from a job interview at a McDonald's. (*Id.* at 295-96). He was supposed to take her to school. (*Id.* at 296). Instead, he stopped at a park, asked her if she "had a boyfriend" and "liked kissing," and then "grabbed [her] face and tongue kissed [her]." (*Id.* at 297).

1

Sometime later, the victim was alone in her mother's apartment, sitting on the couch in the living room and wearing only a sports bra and shorts. (*Id.* at 299-300). Mr. Ivery arrived and told her to "put on clothes" because she "was turning him on." (*Id.* at 299). When she "got up to go put on a shirt," Mr. Ivery slapped her buttocks. (*Id.* at 299-300). He then grabbed her, "put [her] in between his legs," and kissed her. (*Id.* at 300-01). He told her that "he only had a few more years," then left the apartment. (*Id.* at 301).

The final incident took place approximately one year before the rape, when the victim was 17 years old. (*Id.* at 301). She was taking a shower in her mother's apartment, which had only one bathroom. (*Id.* at 301-02, 323). Mr. Ivery knocked on the door and asked to use the toilet. (*Id.* at 302). She said, "Okay." (*Id.*) After flushing the toilet, Mr. Ivery pulled back the shower curtain, put two fingers in his mouth, and then inserted them into her vagina. (*Id.*) He put his fingers back in his mouth and "said [that] he couldn't wait to taste [her]." (*Id.* at 302-03).

On the evening before the rape, Mr. Ivery had sex with the victim's mother at her apartment. (*Id.* at 239-41). The two had sex again the next morning. (*Id.* at 241). The victim's mother then left for work. (*Id.* at 241-42). By that time, the victim had also left the apartment to drive her brother to a doctor's appointment. (*Id.* at 242, 275-76). Later that day, Mr. Ivery texted the victim and told her to "come on home" because "he was cooking breakfast." (*Id.* at 277). She responded, "Eww. I don't care. Hurry up and leave my house." (*Id.* at 501). Mr. Ivery texted back, "I'm not going to do anything to you. Promise you that. Your moms wore me out last night." (*Id.* at 501-02). He then asked, "Can

2

you come home?" (*Id.* at 502). The victim said, "No. I'll be there when you leave. I don't know how many times I have to tell you I'm engaged. Don't text me." (*Id.* at 503).

The victim returned to the apartment, "went straight to [her] room," and "closed [the] door." (*Id.* at 279). Mr. Ivery knocked on the door and asked whether she "was mad at him." (*Id.*) The victim did not respond. (*Id.*) Two or three minutes later, Mr. Ivery knocked on the door again. (*Id.* at 338). This time, she told him to "leave [her] alone." (*Id.*) Sometime later, Mr. Ivery walked into the room without knocking. (*Id.* at 279, 339). He sat on her bed; she "asked him to move." (*Id.* at 284). He "sniff[ed]" her and tried to kiss her arm, prompting her to "back up toward the wall." (*Id.* at 285). He then pinned her down on the bed with his "body weight" and sniffed her "vagina area." (*Id.* at 285-86). At this point, he asked whether she wanted a "massage." (*Id.* at 339). She "shook [her] head no." (*Id.*) He began to massage her shoulders, and she unsuccessfully tried to "nudge" him off. (*Id.* at 288). As she "lay[ ] there crying," he licked her ears and kissed her neck. (*Id.* at 288, 290).

Mr. Ivery got up and began to massage the victim's neck and buttocks. (*Id.* at 288-89). He eventually lifted her dress, pushed aside her underwear, and inserted his penis into her vagina. (*Id.* at 289). He noticed that she was crying and said, "So you really don't want this?" (*Id.*) Mr. Ivery asked whether "he could finish," then left the room. (*Id.* at 291). The victim called her "best friend" and said that her "mother's boyfriend had just raped [her]." (*Id.* at 291-92). As she left the apartment, she saw Mr. Ivery "rubbing" his penis "in the hallway." (*Id.* at 292). She went downstairs to her car and called 911. (*Id.*) When police arrived, she was "crying" and "shaking." (*Id.* at 363).

Later that day, law enforcement interviewed Mr. Ivery. (*Id.* at 463). He said that nobody had told him why he was being questioned. (*Id.* at 492). He believed, however, that "[t]his got to do with some kind of sex crime because that's the only reason you get questioned like this." (*Id.* at 493). Mr. Ivery denied any sexual contact with the victim and claimed that his DNA would not be found on her body. (*Id.* at 496-98). Subsequent analysis revealed his DNA on the victim's neck and ears, as well as the "crotch area" of her underwear. (*Id.* at 622-24, 627, 634-37).

Mr. Ivery was arrested and charged with one count of sexual battery for the August 25, 2015 rape. (*Id.*, Ex. 2). Following a three-day trial, the jury found him guilty as charged. (*Id.*, Ex. 6, at 784). He was sentenced to 40 years in prison as a violent career criminal.[1] (*Id.*, Ex. 8). After an unsuccessful direct appeal, Mr. Ivery moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 14, 16). The postconviction court rejected his claims, and the appellate court affirmed the denial of relief. (*Id.*, Exs. 18, 20, 24). This federal habeas petition followed. (Doc. 1; Doc. 1-1).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal

---

[1] Mr. Ivery had prior convictions for burglary, robbery, and felon in possession of a firearm. (Doc. 7-2, Ex. 7, at 7).

habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court affirmed Mr. Ivery's conviction and sentence, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B. Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually

innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.    Ineffective Assistance of Counsel

Mr. Ivery alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Ivery must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Ivery must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III.    Discussion

### A.    Ground One—Introduction of Collateral-Act Evidence

Mr. Ivery contends that the trial court violated his federal right to due process by admitting evidence of "uncharged collateral crimes." (Doc. 1 at 1; *see also* Doc. 1-1 at 2-5). The charged conduct in this case was limited to the rape that took place on August 25, 2015. (Doc. 7-2, Ex. 2). But the jury also heard about Mr. Ivery's escalating sexual advances toward the victim in the years leading up to the rape. Before trial, the prosecution had filed a notice of its intent to introduce this collateral-act evidence. (*Id.*, Ex. 3). The court held a hearing and took testimony from the victim. (*Id.*, Ex. 5). It ultimately found the evidence admissible under Fla. Stat. § 90.404(2)(c)1, which provides that "[i]n a criminal case in which the defendant is charged with a sexual offense, evidence of the defendant's commission of other crimes, wrongs, or acts involving a sexual offense is admissible and may be considered for its bearing on any matter to which it is relevant." (*Id.* at 38-39). The court explained that the collateral-act evidence showed Mr. Ivery's "grooming" of the victim and provided "context" for the rape. (*Id.* at 38). Specifically, the evidence "rebut[ted] the idea" that the rape was "a onetime thing, never any problems before, and then lo and behold he just forces sex on her." (*Id.* at 39).

Mr. Ivery now contends that the admission of collateral-act evidence violated his right to due process because (1) the victim "was not an inherently credible witness," (2)

her description of the incidents was "nothing more than an attempt to cast [him] in a bad light," and (3) the prior bad acts were "unsubstantiated." (Doc. 1-1 at 2-5).

Respondent maintains that this claim is procedurally defaulted. (Doc. 7 at 14). The Court need not decide that issue because, even assuming Mr. Ivery properly exhausted his state-court remedies, he cannot show that the rejection of Ground One was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Cook v. McNeil*, 266 F. App'x 843, 846 (11th Cir. 2008) (affirming denial of habeas petition because, "[e]ven if [petitioner] exhausted his due process claim," he could not "establish either that the state courts applied a standard contrary to federal law or that they applied that precedent in an unreasonable manner"); *Acosta v. Artuz*, 575 F.3d 177, 188-89 (2d Cir. 2009) ("Even if we were to assume that [petitioner] adequately exhausted state remedies on the precise challenge to the admission of his confession that he now raises in his habeas petition, we would agree with the district court that no relief is warranted because [he] has not demonstrated that the state court's rejection of his claim on the merits was an objectively unreasonable application of clearly established Supreme Court precedent.").

"'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). The Supreme Court has repeatedly cautioned lower courts against framing its decisions at "a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013); *see also Brown v. Davenport*, 596 U.S. 118, 136 (2022) (noting that "holdings that speak only at a high level of generality" "cannot supply a ground for relief"

under AEDPA). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

The Supreme Court has never "squarely established" any constitutional limits on the admission of collateral-act evidence. *Knowles*, 556 U.S. at 122. To the contrary, the Court expressly declined to determine "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991). Thus, as several lower courts have recognized, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting . . . other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Coningford v. Rhode Island*, 640 F.3d 478, 484 (1st Cir. 2011) (finding no "clearly established Supreme Court case law speaking directly to the admission of prior bad acts evidence"); *Flores v. Adams*, 319 F. App'x 514 (9th Cir. 2009) ("[T]he admission of propensity evidence did not entitle [ ] petitioner to habeas relief because there is no clearly established Supreme Court precedent holding that the admission of such evidence is a violation of due process."). The absence of on-point precedent from the Supreme Court is fatal to Mr. Ivery's claim. *See Loggins v. Thomas*,

654 F.3d 1204, 1222 (11th Cir. 2011) ("Because implications are not actual holdings, the implications of Supreme Court decisions cannot clearly establish federal law for § 2254(d)(1) purposes any more than dicta can.").

Even apart from the absence of clearly established federal law, Mr. Ivery cannot show that the admission of collateral-act evidence "failed the due process test of fundamental fairness." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The "category of infractions that violate 'fundamental fairness'" is "very narrow[ ]," and Mr. Ivery cannot show that the trial court unreasonably applied this general principle by admitting collateral-act evidence in his case. *Id.* In a sexual-battery prosecution, collateral-act evidence "may be considered for its bearing on any matter to which it is relevant." Fla. Stat. § 90.404(2)(c)1. Here, the collateral-act evidence showed that in the years leading up to the rape, Mr. Ivery made a series of escalating sexual advances toward the victim. This course of conduct made it more likely that he engaged in sexual intercourse with the victim on August 25, 2015—one of the elements of the charged offense.[2] In these circumstances, a reasonable jurist could conclude that the introduction of collateral-act evidence was not "so extremely unfair that its admission violate[d] 'fundamental conceptions of justice.'" *Dowling*, 493 U.S. at 352 (citation omitted); *see also Lutz v. Palmer*, No. 3:11-cv-334-LAC-EMT, 2012 WL 4660685, at *16 (N.D. Fla. Sept. 10, 2012) (petitioner "not entitled to relief" because he "failed to identify a Supreme Court case holding that the admission

---

[2] As noted above, Mr. Ivery denied any sexual contact with the victim.

of similar fact or collateral crime evidence in circumstances such as the instant case was unconstitutional"), *adopted by* 2012 WL 4660981 (N.D. Fla. Oct. 3, 2012).

**B.    Ground Two—Exclusion of Evidence Concerning Victim's "Bias"**

Mr. Ivery argues that the trial court violated his constitutional right to present a "full and fair defense" by excluding evidence of the victim's "bias" against him. (Doc. 1-1 at 7-5-8). Specifically, the victim told law enforcement that at some point before the rape, she had "texted Mr. Ivery to come over to set him up so [her] boyfriend could beat him up." (Doc. 7-2, Ex. 6, at 563). The court excluded this evidence, reasoning that (1) the victim "already [had] an acknowledged bias or interest against" Mr. Ivery,[3] and (2) any testimony about the "set up" would serve only to "further tar" the victim. (*Id.* at 573).

Respondent correctly contends that Ground Two is unexhausted and procedurally defaulted. (Doc. 7 at 17-19). Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). On direct appeal, Mr. Ivery claimed that the trial court "abused its discretion" under Florida law by excluding evidence of the victim's "attempt to have [him] beaten up." (Doc. 7-2, Ex. 11, at 29). But he did not argue

---

[3] The victim testified that she disliked Mr. Ivery for several reasons beyond his sexual abuse, including that he was unfaithful to her mother and did not financially support her family. (Doc. 7-2, Ex. 6, at 348-49).

that this evidentiary ruling violated any provision of the federal constitution. (*Id.* at 29-32). Accordingly, Mr. Ivery failed "to afford the state court[ ] a meaningful opportunity to consider" his federal constitutional claim. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).

Mr. Ivery did raise the federal component of his claim in his Rule 3.850 motion, arguing that the trial court violated his constitutional rights by excluding evidence of the "set up." (Doc. 7-2, Ex. 16, at 34). But the postconviction court rejected this claim as procedurally barred. It explained that the evidentiary issue "should have been raised on direct appeal and [was] not cognizable in [a] motion[ ] for postconviction relief." (*Id.*, Ex. 18, at 2, 4). Because "the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds"—and because Mr. Ivery did not properly exhaust his claim on direct appeal—Ground Two is procedurally defaulted. *LeCroy v. Sec'y, Fla. Dep't Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005).

To overcome the default, Mr. Ivery must show either cause and prejudice or a miscarriage of justice. *See Mincey v. Head*, 206 F.3d 1106, 1135 (11th Cir. 2000) ("It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court . . . unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'"). Mr. Ivery fails to make the required showing. Accordingly, Ground Two is barred from federal habeas review.

## C.    Ground Three—Sufficiency of the Evidence

Mr. Ivery contends that the trial court violated his due process rights by denying his motion for judgment of acquittal. (Doc. 1 at 8). According to him, the prosecution failed to

13

prove beyond a reasonable doubt that the victim "did not want to have [a] sexual encounter." (*Id.*) The trial court rejected this argument, and the appellate court affirmed in an unexplained decision. (Doc. 7-2, Ex. 6, at 681; Doc. 7-2, Ex. 14).

Mr. Ivery's sufficiency challenge is meritless. Under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have "resolved any such conflicts in favor of the prosecution." *Id.*

Consistent with AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Mr. Ivery fails to show that the rejection of his sufficiency challenge was "objectively unreasonable." *Id.* As noted above, Mr. Ivery was charged with sexual battery, which requires proof that sexual contact "occurred without consent." *Statler v. State*, 349 So. 3d 873, 880 (Fla. 2022). "Consent" means "intelligent, knowing, and voluntary consent

14

and does not include coerced submission." Fla. Stat. § 794.011(1)(a). Moreover, consent "shall not be deemed or construed to mean the failure by the alleged victim to offer physical resistance to the offender." *Id.* Consent "is a relative term to be viewed under the circumstances of each case," and it "is essentially a question for the jury." *Hufham v. State*, 400 So. 2d 133, 135 (Fla. 5th DCA 1981).

Here, a rational jury could have found beyond a reasonable doubt that Mr. Ivery "did not have a willing partner." *Statler*, 349 So. 3d at 880. At the time of the incident, Mr. Ivery was engaged in a sexual relationship with the victim's mother. (Doc. 7-2, Ex. 6, at 239-41). He was 43 years old; the victim was 18. (*Id.* at 260, 463). The morning of the incident, Mr. Ivery urged the victim via text message to "come on home" because "he was cooking breakfast." (*Id.* at 277). She responded, "Eww. I don't care. Hurry up and leave my house." (*Id.* at 501). Mr. Ivery texted back, "I'm not going to do anything to you. Promise you that. Your moms wore me out last night." (*Id.* at 501-02). He then asked, "Can you come home?" (*Id.* at 502). The victim said, "No. I'll be there when you leave. I don't know how many times I have to tell you I'm engaged. Don't text me." (*Id.* at 503).

When the victim returned to the apartment, she "went straight to [her] room" and "closed [the] door." (*Id.* at 279). Mr. Ivery knocked on the door twice, and the victim told him to "leave [her] alone." (*Id.* at 338). He ignored this instruction, entered the room without knocking, and sat on the bed. (*Id.* at 279, 284, 339). She rebuffed his attempt to kiss her by "back[ing] up toward the wall." (*Id.* at 285). He then pinned her down and asked whether she wanted a "massage." (*Id.* at 339). She "shook [her] head no" and tried to "nudge" him off when he began to massage her shoulders. (*Id.* at 288, 339). She started to

15

cry; he got up, lifted her dress, and inserted his penis into her vagina. (*Id.* at 288-89). At trial, the victim testified that she did not "consent to" this sexual contact, and that her lack of consent was "obvious." (*Id.* at 291).

Viewed in the light most favorable to the prosecution, this evidence was collectively sufficient to show that the victim "was not a willing partner." *Statler*, 349 So. 3d at 880; *see also Hubbard v. Sec'y, DOC*, No. 2:08-cv-215-CEH-DNF, 2011 WL 554078, at *14 (M.D. Fla. Feb. 8, 2011) (rejecting sufficiency challenge to sexual-battery conviction where "[t]he victim testified that she did not consent to have sex with the [p]etitioner"). Accordingly, the state court reasonably rejected Mr. Ivery's sufficiency challenge.

### D.    Ground Four—Failure to Properly Advise Mr. Ivery about Testifying at Trial

Finally, Mr. Ivery contends that trial counsel was ineffective for advising him not to testify at trial "unless [he was] willing to concede that sex occurred." (Doc. 1 at 10). According to Mr. Ivery, he consistently told counsel that "he was innocent and [the victim] was . . . trying to set him up," that he "[n]ever did "anything sexual toward [her] whether she was an adult or while she was underage," and that she "manually transferred his DNA onto her without his knowledge." (Doc. 1-1 at 11). Mr. Ivery alleges that during trial he told counsel he "wanted to testify." (*Id.* at 12). In response, counsel allegedly said that Mr. Ivery "needed . . . to . . . testify the two had sex but that it was consensual." (*Id.*) According to Mr. Ivery, counsel "specifically told him not to testify that [the victim] was trying to set him up." (*Id.*) Mr. Ivery ultimately chose not to testify in his defense. (Doc. 7-2, Ex. 6, at 688-89). He now contends that counsel's advice was "patently unreasonable" because it

would have required him to "lie under oath only to tell a story readily impeachable by his prior interview with police detectives." (Doc. 1-1 at 12-13).

Mr. Ivery correctly concedes that this claim is procedurally defaulted because he failed to raise it in state court. (*Id.* at 14-17; Doc. 1 at 11). This means that he cannot obtain relief "unless [he] can demonstrate cause for the default and actual prejudice, or that he is actually innocent." *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013). Mr. Ivery seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that it "has some merit." *Martinez*, 566 U.S. at 14, 17. A claim is "insubstantial" if it is "wholly without factual support." *Id.* at 16.

*Martinez* does not excuse the default because Mr. Ivery's ineffective-assistance claim is not "substantial." *Id.* at 14. This conclusion follows from the Supreme Court's decision in *Shinn v. Ramirez*, which significantly restricted *Martinez*'s scope. 596 U.S. 366 (2022). *Shinn* held that, unless a petitioner satisfies § 2254(e)(2), a federal court cannot consider evidence outside the state-court record "to assess cause and prejudice under *Martinez*." *Id.* at 389. Section 2254(e)(2), in turn, imposes "stringent requirements" on a petitioner seeking to expand the state-court record. *Id.* It states that if a petitioner "failed to develop the factual basis of a claim in State court proceedings," a federal court cannot consider new evidence unless the claim relies on either (1) "a new rule of constitutional law" or (2) "a factual predicate that could not have been previously discovered through the

17

exercise of due diligence." 28 U.S.C. § 2254(e)(2). Even if a petitioner satisfies either of these exceptions, he still must show that further factfinding would establish, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the charged offense. *Id.* § 2254(e)(2)(B).

*Shinn* forecloses relief on Mr. Ivery's ineffective-assistance claim. The state-court record contains no evidence of the advice counsel allegedly gave Mr. Ivery about testifying at trial. (Doc. 7-2). Thus, his claim necessarily relies on evidence that was not presented in state court. But § 2254(e)(2) bars this Court from considering any new evidence. As noted above, § 2254(e)(2) applies to petitioners who "failed to develop the factual basis of [their] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence," as used in § 2254(e)(2), "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435.

Mr. Ivery failed to diligently pursue his ineffective-assistance claim in state court. He raised several claims in his Rule 3.850 motion. But he did not bring the claim he seeks to pursue now—namely, that counsel gave him bad advice about testifying at trial. (Doc. 7-2, Ex. 16). Indeed, at no point in the Rule 3.850 proceedings did Mr. Ivery allege that he had spoken to counsel about testifying in his defense. Because Mr. Ivery did not make "a reasonable attempt to investigate and pursue his ineffective assistance of counsel claim in state court," that claim is subject to § 2254(e)(2). *McNair*, 416 F.3d at 1298; *see also Will*

18

*v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 907 (11th Cir. 2008) (petitioner "did not sufficiently develop the factual basis of [his] claim in state court" under § 2254(e)(2) because he never "raise[d] before the state habeas court his claim that his trial counsel was ineffective for failing to move to suppress his confession on the basis that he requested, but was refused, counsel during an unrecorded break in his interrogation").

Mr. Ivery cannot satisfy § 2254(e)(2)'s stringent requirements. His ineffective-assistance claim does not rely on "a new rule of constitutional law," and the "factual predicate" for that claim—counsel's allegedly deficient advice about testifying at trial—was known to him during the Rule 3.850 proceedings. 28 U.S.C. § 2254(e)(2)(A). Moreover, Mr. Ivery cannot show that further factfinding on his claim would establish, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of sexual battery. *Id.* § 2254(e)(2)(B).

Thus, Mr. Ivery cannot prevail unless he shows that his ineffective-assistance claim is "substantial" "considering only the state-court record." *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 724 (3d Cir. 2022); *see also Rogers v. Mays*, 69 F.4th 381, 397 (6th Cir. 2023) (noting that the state-court record contained "all the evidence we can consider" under *Martinez* because petitioner "ha[d] not satisfied § 2254(e)(2)"); *Apolonio v. Sec'y, Dep't of Corr.*, No. 21-12297, 2022 WL 17411282, at *5 (11th Cir. Dec. 5, 2022) ("We cannot consider [petitioner's] new factual allegation as evidence supporting [his] ineffective-assistance claim because [he] has not satisfied the requirements for a federal evidentiary hearing under 28 U.S.C. § 2254(e)(2)."); *Grace v. Sec'y*, No. 8:21-cv-621-MSS-AEP, 2024 WL 492991, at *11 (M.D. Fla. Feb. 8, 2024) (holding that, because

petitioner failed to "meet his heavy burden under [§] 2254(e)(2)," he "must demonstrate deficient performance and prejudice . . . based on the state-court record"). Mr. Ivery cannot make this showing because his claim finds no support in the state-court record. Therefore, *Martinez* does not excuse the default, and Ground Four is barred from federal habeas review.[4]

## IV.   Conclusion

Accordingly, the Court **ORDERS**:

1.  Mr. Ivery's petition (Doc. 1) is **DENIED**.

2.  The **CLERK** is directed to enter judgment against Mr. Ivery and to **CLOSE** this case.

3.  Mr. Ivery is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Ivery must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Ivery has not made the requisite showing. Because Mr. Ivery is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

---

[4] Mr. Ivery does not contend that he qualifies for the actual-innocence exception.

**DONE AND ORDERED** in Tampa, Florida, on January 7, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE